

### THE UNIVERSITY OF NORTH CAROLINA AT WILMINGTON

October 3, 2001

Rosa Turrisi Fuller
514 North 25th Street
Wilmington, NC 28405

HAROLD M. WHITE, JR.
University Counsel
Assistant to the Chancellor

Dear Ms. Fuller:

I am in receipt of your letter to me dated October 1, 2001. I appreciate your vigorous and thoughtful response. Your position has been carefully considered by and discussed among and between all of the Senior Officers of the University. However, the position of the University is unchanged. We are not prepared to force release of all email from the address adamsm@uncwil.edu from September 15 to September 18 for the reasons set forth in my letter to you of September 26, 2001. Please allow me to respond briefly to some of the supplementary points you made in your request for reconsideration.

You interpret the Public Records Act "to include any and every email sent by an employee of the University, from a University e-mail address, with the use of the University's central computing facilities and services." Such an interpretation would mean that emails between parents and children, husbands and wives, and friends and neighbors that are exchanged where one of the correspondents is a university employee, whether sending or receiving from a university address, would be considered a public record. Such an interpretation would mean that there could never be a private transmission or reception, to or from anyone, for any reason, by a university employee at a university address on the central computing system. Though I would not characterize such an interpretation as tendentious, it is an interpretation that is unacceptable to the University and that we believe is incorrect. First, for reasons stated in my letter of September 26, we do not believe such mails are public records. Second, such an interpretation does not protect the privacy of individual persons and can chill private discourse over the public network. Third, the Computing Resource Use Policy was specifically drafted to make it clear that personal, private communications to and from employees are permissible and can and do exist. I am aware, of course, that your status as a student and Dr. Adams' status as a professor lends an element of analysis to the situation that is not quite as simple or, as you put it, as "narrow" as an analysis of an email between, say, a parent and a child. Yet, most elements of analysis are legally similar for reasons I set forth in my first letter to you. Moreover, as I said in my first letter, the issue of your Public Records request is entirely distinct from the issue of your complaint concerning what you perceive as the abusiveness of Dr. Adams' discourse in his email to you. That complaint is separately considered by the Dean and the Provost, and their discussions with Dr. Adams and their ultimate determination about the appropriateness of his conduct is protected by personnel privacy regulations.

Similarly, when the Computing Resource Use Policy states that "occasional, brief personal uses are permissible" if such "use does not harm or invade the rights of others", this does not connote that a departure from permissible conduct on the network transforms an email into a public record. Rather, it transforms such use into misconduct on the network. Again, your complaint regarding abusive messages will be considered in light of policies regarding appropriate discourse on the network and in regard to the First Amendment. Penalties can range from none to reprimand to termination of privileges to use the campus computing network. However, again, this process is protected by personnel privacy regulations and is entirely distinct from the consideration of what does or does not constitute a public record.

601 SOUTH COLLEGE ROAD · WILMINGTON, NORTH CAROLINA 28403-3297 · 910-962-3030 · FAX 910-962-4050

AvUNCW_Compl_Ex_25_044

Case 7:07-cv-00064-H   Document 1-13   Filed 04/10/07   Page 1 of 9

-2-

You mentioned the concept of publication. In the area of media or communications law, the concept of publication embraces and includes both public and private communication. The simplest utterance with the intention that it constitute a message to be received by, communicated to, or interpreted by another is a "publication." It is true that some aspects of the law (such as defamation) depend upon how widely or to whom a communication is published. However, the encouragement to publish in the Computing Resource Use Policy was not intended to refer only to web pages, but also to the more general philosophy of the free flow of information, academic freedom, and free and robust discourse that characterize a university community. Unfortunately, on occasion, particularly where issues are controversial or where a person's rights or prerogatives feel threatened, such discourse can become insulting or even abusive. The issue of where discourse crosses the line from insult to abuse is one of the most difficult ones in a State university committed both by law and by philosophy to free speech. However, that difficult determination is not the gravamen of whether a publication is a public record.

As relates to the personnel privacy regulations and the Family Educational Rights and Privacy Act, you should be aware that when you make a blanket request for all emails from a certain address between certain dates, it has a dragnet effect. There may well be email communication between Dr. Adams and members of the administration or others concerning, for example, your complaint against his conduct. Such emails are protected by the personnel records exemptions to the Public Records Act and could not be produced even though they are public records of the State. Similarly, when you make a blanket request for all emails from a certain address between certain dates, the dragnet effect of such a request sweeps into its purview email between the faculty member and his students in his classes that are protected by the Family Educational Rights and Privacy Act.

Finally, the only records that you have requested that might arguably not fall within an exception to the Public Records Act would be other official emails (say, perhaps, hypothetically, to the Faculty Senate regarding an academic policy, or to some other public agency regarding some research or other instructional activity of the university), and the emails to you or about your assertions concerning the current public policy debates surrounding the recent terrorist attacks. For the reasons stated above and in my September 26 letter, we do not believe these latter emails regarding post-terrorist policy are public records at all. Although the private person exception is related in part to trade secret protection, it is not by its terms limited to trade secret protection, and there is also a common law and a constitutional law right of privacy that exists where constitutionally crafted law and policy does not clearly limit it.

For the foregoing reasons, the position of the University is unchanged. We do not believe the communications you have requested are public records, and we are not prepared to force the faculty member to produce all of his email between September 15-18 for your inspection. Again, we are sensitive to the concerns that you expressed in your original complaint. However, the question of whether or not Dr. Adams' discourse was appropriate in tone or content is a personnel and computer usage issue that is distinct from your public records request.

Sincerely yours,

*Harold M. White*

Harold M. White, Jr.

cc:   Chancellor
      Provost
      Vice Chancellor, ITSD
      Vice Chancellor, Student Affairs



Harold M. White, Jr.
University Counsel
The University of North Carolina at Wilmington

CC: Chancellor; Provost; Vice Chancellor for Information Technology Systems

Dear Mr. White:

As you remark, in your letter of October 3, I have interpreted the Public Records Act of the State of North Carolina "to include any and every e-mail sent by an employee of the University, from a University e-mail address, with the use of the University's central computing facilities and services." You correctly understand this interpretation of this one application of the law to mean that any e-mail message either sent from, or received from (i.e., sent from), a University employee's address by a University employee "would be considered a public record." You then incorrectly understand this interpretation of this one application to mean, "there could never be a private transmission or reception, to or from anyone, for any reason, by a university employee at a university address." This second interpretation of the law may well be the correct one, but it is not the one I have offered in this instance. My interpretation of this one application of the law would not include messages sent from a non-University address, or from a University student address, and received by an employee at a University employee's address. My interpretation would not include messages sent or received by a University employee with the use of an internet e-mail service, such as Hotmail, even if this employee used the University's central computing facilities.

You then state three reasons you believe my interpretation is incorrect:

(1) You "do not believe such mails ['between parents and children, husbands and wives, and friends and neighbors . . . where one of the correspondents is a university employee, whether sending or receiving from a university address"] are public records." You refer to the "reasons stated in [your] letter of September 26." The one reason in this letter, which addresses "such mails," is the opinion that each such mail is "personal, and thus the property of a private person as set forth in GS 132-1.2 (2)." I rebutted this reason in my October 1 letter. I observed that this section of the Public Records Act has only to do with "trade secrets." You answer, in your most recent letter, "although the private person exception is related in part to trade secret protection, it is not by its terms limited to trade secret protection." This statement is false. The reference to "a private 'person'" in this section is one element of an indivisible whole. ("G.S. 132-1.2 Confidential information. Nothing in this chapter shall be construed to require or authorize a public agency or its subdivision to disclose any information that: (1) Meets all the following conditions [my emphasis]: a. Constitutes a 'trade secret' as defined in G.S. 66-152 (3). b. Is the property of a private 'person' as defined in G.S. 66-152 (2) [Commerce and Business. "Person means an individual, corporation, government, governmental subdivision or agency, business, trust, estate, trust, partnership, association, joint venture, or any other legal or

commercial entity."] c. Is disclosed or furnished to the public agency in connection with the owner's performance of a public contract or in connection with a bid, application, proposal, industrial development project, or in compliance with laws, regulations, rules, or ordinances of the United States, or political subdivisions of the State.") I repeat: this section with its reference to "the property of a private 'person'" has only to do with "trade secrets."

You also claim, in your most recent letter, "there is also a common law and a constitutional law right of privacy that exists where constitutionally crafted law and policy does not clearly limit it." I submit that the North Carolina Public Records Act and the University's Computing Resource Use Policy meet the standard of constitutionality. The Public Records Act limits the "right of privacy" in relation to public records and provides no specific exception or exemption in the case of any State employee who uses State facilities to communicate any "private" or personal message (whether or not such a message states a "personal opinion in connection with general public discourse" or "current public policy debates"). The University's Computer Resource Use Policy explicitly states that "users do not have an expectation of privacy regarding their uses of the system, and the issuance of confidential passwords or specific [e-mail] addresses should not be understood to provide an expectation of privacy." The University provides its "central computing facilities and services for the instructional, research, and administrative computing needs of the university." Therefore, "access to the university's computing facilities and resources . . . is a privilege," not a right. This privilege carries no right of privacy. The Policy also states, "information contained on UNCW equipment and in UNCW accounts, including e-mail, if 'made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina,' unless subject to specific statutory exceptions and exemptions, may be subject to inspection under the Public Records Law of the State of North Carolina." The Policy warns every user: your use of a University e-mail address carries no expectation of privacy and your e-mail communications "may be subject to [public] inspection."

(2) You claim my interpretation is incorrect because "such an interpretation does not protect the privacy of individual persons and can chill private discourse over the public network." The Computer Resource Policy already rebuts any expectation of privacy in the use of the University's central computing system.

(3) You claim my interpretation is incorrect because "the Computing Resource Use Policy was specifically drafted to make it clear that personal, private communications to and from employees are permissible and can and do exist." This statement is false. The Policy merely states, "occasional, brief personal uses are permissible"; it rebuts any expectation of privacy in these personal uses. It also puts seven different limitations on such uses. The enforcement of these limitations presupposes the public availability of each and every such use of the central computing facilities and services by a University employee.

You note that the relationship between Mike Adams and me, his status as a faculty member and my status as a student, is an "element" that differentiates his e-mail letter to me from other permissible uses. What is the nature of this difference? You offer no explanation. You evidently still believe Adams "was not speaking in his official role as a faculty member" and "was not transacting public business on behalf of the State of North Carolina" when he answered my e-mail letter to him, which addressed him as a faculty member. You entirely ignore my argument that, because I addressed Adams as a faculty member, he answered my letter in his role as a faculty member. You also ignore my criticism of your definition of the "official role" and "public business" of a University faculty member. You ignore the distinctive role of a faculty member in the furtherance of the "appropriate opportunities and conditions" of the freedom to learn "in the classroom, on the campus, and in the larger community."

I never claimed that the abusive nature of the e-mail letter Adams sent me turned a private e-mail communication into a public record. As you noted, I claimed "any and every e-mail sent by an employee of the University, from a University e-mail address, with the use of the University's central computing facilities and services," is ipso facto a "public record." I merely rebutted your implication that the Computing Resource Use Policy permits such abusive e-mail messages.

I never claimed that the abusive nature of the e-mail Adams sent me turned a restricted publication into a public record. His e-mail letter to me is a public record, whether or not someone interprets it as a publication. I merely rebutted your implication that the Computing Resource Use Policy permits such abusive e-mail "publications."

You repeat your claim that the e-mail messages I wish to inspect are protected from disclosure either (1), as personnel files of State employees, by the personnel records exception to the Public Records Act, or (2), as personally identifiable education records, by the US Family Educational Rights and Privacy Act. I have said I have not asked to see either personnel records or education records. Not every communication between a faculty member and a member of the administration is a personnel record, and not every communication between a faculty member and a student is a student record. Personnel records consist in information on "the individual's application, selection or nonselection, promotions, demotions, transfers, leave, salary, suspension, performance evaluation forms, disciplinary actions, and termination of employment" (G.S. 126-22). Education records consist in personally identifiable records "directly related to a student," and "maintained by an educational agency or institution or by a party acting for the agency or institution" (FERPA, 34 C.F.R. Sec. 99.3). These records typically consist in academic transcripts, disciplinary and counseling files. I have asked to see the e-mail messages sent by a faculty member, Mike Adams, with the use of the University's central computing facilities and services, from the address: adamsm@uncwil.edu, from September 15 to September 18. In the unlikely case these e-mail messages contain any personnel records or personally identifiable student records, I ask the University to separate the confidential information in these records from the other and nonconfidential information in these same e-mail messages. (G.S. 132-6 (c): "No request to inspect, examine, or

obtain copies of public records shall be denied on the grounds that confidential information is commingled with the requested nonconfidential information. If it is necessary to separate confidential from nonconfidential information in order to permit the inspection, examination, or copying of the public records, the public agency shall bear the cost of such separation.")

I continue to ask the Office of Information Technology, and any other appropriate office or officer of the University, to let me and my representatives inspect the nonconfidential information in the e-mail messages Mike Adams sent, with the use of the University's central computing facilities and services, from the address: adamsm@uncwil.edu, from September 15 to September 18, as public business, in accordance with the Public Records Law of the State of North Carolina. (G.S. 132-1 (b): "The public records and public information compiled by the agencies of North Carolina government or its subdivisions are the property of the people. Therefore, it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law.")

Rosa T. Fuller
October 10, 2001

*Rosa Fuller*

# UNCW

THE UNIVERSITY OF NORTH CAROLINA AT WILMINGTON

October 11, 2001

HAROLD M. WHITE, JR.
University Counsel
Assistant to the Chancellor

Rosa Turrisi Fuller
514 North 25th Street
Wilmington, NC 28405

Dear Ms. Fuller:

    I am in receipt of your letter to me dated October 10, 2001. I appreciate your thorough review of G.S. 132-1, G.S. 132-6, G.S. 66-152, G.S. 126-22, and 34 C.F.R. 99.3, et.al. Both I and also the offices of the North Carolina Attorney General and the General Counsel of the UNC system, with whom I have consulted on your requests, are thoroughly familiar with the provisions you cite and with the relevant university policies and their intended purposes. Moreover, your interpretations of those provisions and policies are not novel. Therefore, every aspect of your request, including aspects raised explicitly only in your most recent letter, have already been considered due to intimate familiarity with all aspects of North Carolina and federal law concerning public records, personnel privacy, and educational records.

    The position of the University is unchanged for the reasons set forth in my letters to you of September 26 and October 3. We are not prepared to force Dr. Adams to produce all of the email to and from his campus email address between the dates of September 15 and September 18, 2001. I understand fully that you do not agree with this position. I have attempted, as best I can, to explain the position of the University as well as the reasons for it. However, it is clear that you do not agree with either our decision or our reasoning for it. Therefore, it serves no further purpose to continue a debate about the decision. The decision of the University is final.

Sincerely yours,

*Harold M. White Jr.*

Harold M. White, Jr.

cc: Chancellor
    Provost
    Vice Chancellor, ITSD
    Vice Chancellor, Student Affairs



Harold M. White, Jr.
University Counsel
The University of North Carolina at Wilmington

CC: Chancellor; Provost; Vice Chancellor for Information Technology Systems

Dear Mr. White:

I understand the "decision of the University," as you put it in your October 11 letter, "is final." I understand you believe "it serves no further purpose to continue a debate about the decision." I also have no wish to debate this decision further in letters between us. What I don't understand is this: what is the University's decision?

You write that the University is "not prepared to force Dr. Adams to produce all the email to and from his campus email address between the dates of September 15 and September 18, 2001." Should I understand this to be the University's "final decision"?

I have **never** asked the University to let me see the e-mail messages sent **to** Mike Adams at his University e-mail address.

I have **never** asked the University to **force** Mike Adams to let me see his e-mail correspondence. I have asked the University to let me see the e-mail messages sent by him from his e-mail address on and between the said dates. I understand the University already has these messages in its custody and under its control. Dr. Robert Tyndall has assured me the University will, in accordance with your directive, do what is in its "power to ensure that the e-mail records under discussion are preserved." The University could hardly preserve these messages if Adams alone had them in his custody and under his control.

I also have **not** asked the University to let me see **all** the e-mail messages sent by Mike Adams from September 15 to September 18, if some of these messages contain any personnel records or personally identifiable student records. I have asked the University to separate the confidential from the non-confidential information in these messages.

The University's "final decision," as you put it, is then evidently this: it will not do what I have not asked it to do. Why would the University decide not to do what I have not asked it to do? Is this really supposed to be the University's "final decision"? This odd, even if not entirely novel, decision seems to be the result of an insufficiently intimate familiarity with the canons of logic.

I suspect the University has decided not to do what I have not asked it to do because a decision not to do what I really have asked it to do would put it in open defiance of State law.

AvUNCW_Compl_Ex_26_051

Received Oct-25-01 04:04pm From-9109627385 To-FOUNDATION FOR INDIV Page 08

Case 7:07-cv-00064-H Document 1-13 Filed 04/10/07 Page 8 of 9

The question is ultimately this: does the University believe any e-mail communication, sent by any employee of the University, from any University e-mail address, with the use of the University's central computing facilities and services, could, under any conceivable circumstance, come under the Public Records Law of the State of North Carolina, as a public communication "made or received pursuant to law or ordinance in connection with the transaction of public business"? You said, in your October 3 letter, the "only records" in the e-mail correspondence Mike Adams sent, from September 15 to September 18, that could come under the Public Records Act would have to be "other official emails" (other than personnel records and personally identifiable student records), which would include, "hypothetically," e-mail letters "to the Faculty Senate regarding an academic policy, or to some other public agency regarding some research or other instructional activity of the university." But the University has not yet separated such "official" e-mail records, if any, from the other and "non-official" records, and let me and my representatives inspect them. I once more ask the University to do so. An officer of the University will have to do an inventory of the e-mail messages Mike Adams sent from September 15 to September 18 and separate them into the appropriate classes. The University should immediately let me see any "official" e-mail communications, other than personnel or student records. I also ask to see the resultant list of the different classes of these e-mail messages, as a public record.

If the University refuses to do an inventory of the e-mail letters Mike Adams sent on the relevant dates, or refuses to let me see his "official" messages, other than the ones exempt under the law, then it stands in open and absolute defiance of State law. The matter will then have to be finally decided in another forum.

If the University continues to claim some of the "non-official" correspondence Mike Adams sent on the relevant dates is exempt under the law, because "personal, and thus the property of a private person as set forth in GS 132-1.2(2)," in defiance of any reasonable interpretation of this section of the law, then this matter also will have to be finally decided in another forum.

Rosa T. Fuller
October 15, 2001

*Rosa Fuller*